IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DONNIE LEE WYNN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   CV 121-162 |
| | ) |
| BRIAN ADAMS, Warden, | ) |
| | ) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The above-captioned case, filed pursuant to 28 U.S.C. § 2254, is before the Court for initial review pursuant to Rule 4 of the Rules Governing Section 2254 Cases. The Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DISMISSED** as untimely and this civil action be **CLOSED**.

### I.   BACKGROUND

A Richmond County Superior Court jury convicted Petitioner of rape, child molestation, and incest. (Doc. no. 1, p. 1; doc. no. 1-1, p. 4); Wynn v. State, 744 S.E.2d 64 (Ga. Ct. App. 2013). The trial court sentenced Petitioner on April 24, 2008, to life in prison for rape, and twenty and thirty-year consecutive sentences for child molestation and incest, respectively. (Doc. no. 1, p. 1; doc. no. 1-1, p. 4.) The Georgia Court of Appeals affirmed the judgment of conviction on May 30, 2013. Wynn, 744 S.E.2d at 71. Petitioner does not report filing any additional direct appeal proceedings. (Doc. no. 1-1, p. 4.)

Petitioner filed a state petition for a writ of habeas corpus in the Superior Court of Tattnall County on May 16, 2017. (Doc. no. 1, p. 3; doc. no. 1-1, p. 4, Civ. Act. No. 2017-HC-34-RR (Tattnall Cnty. Sup. Ct. May 16, 2017.) The state habeas court held an evidentiary hearing on August 22, 2018, and denied relief in a written order entered October 7, 2020. (Doc. no. 1, pp. 3, 19-25; doc. no. 1-1, p. 4.) The Georgia Supreme Court denied a Certificate of Probable Cause to Appeal ("CPC") on August 10, 2021. (Doc. no. 1, pp. 4, 26-27; doc. no. 1-1, p. 4; Wynn v. Williams, S21H0398 (Ga. Aug. 10, 2021).)

Petitioner executed the instant federal habeas corpus petition on October 22, 2021, and the Clerk of Court filed it on October 29, 2021. (Doc. no. 1, pp. 1, 15.) The Court denied the motion to proceed *in forma pauperis*, and Petitioner paid the $5.00 filing fee on December 6, 2021. (Doc. nos. 2, 5.) Petitioner raises several claims for relief based on alleged ineffective assistance of trial, appellate and collateral counsel, as well as alleged trial and appellate court errors. (See generally doc. nos. 1, 1-1.)

**II.    DISCUSSION**

**A.    The Petition Should Be Dismissed as Time-Barred**

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), there is a one-year statute of limitations for § 2254 petitions that runs from the latest of:

> (1)(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) (explaining judgment for petitioners who do not seek certiorari from United States Supreme Court becomes final at "'expiration of the time for seeking such review - when the time for pursuing direct review in this Court, or in state court, expires.'"); Stubbs v. Hall, 840 S.E.2d 407, 412 (Ga. 2020) (interpreting Georgia habeas corpus law in accordance with Gonzalez, *supra*, to conclude judgment of conviction is final when Supreme Court affirms conviction on merits or denies certiorari, "or when the time for pursuing the next step in the direct appellate review process expires without that step having been taken").

Accordingly, for a Georgia defendant who has his or her conviction affirmed on direct appeal by the Court of Appeals but does not petition for certiorari to the Georgia Supreme Court, the conviction becomes final when the twenty days to petition for certiorari expires without filing such a petition. Stubbs, 840 S.E.2d at 413 (citing Ga. Sup. Ct. R. 38(2)). This is so because the United States Supreme Court does not allow filing for a writ of certiorari unless a judgment "has been entered by a state court of last resort." Id. (citing U.S. Sup. Ct. R. 13.1). As Petitioner did not seek a writ of certiorari from Georgia's Supreme Court, his

convictions became final in June 2013, twenty days after the Court of Appeals affirmed his convictions on May 30, 2013.  See id. at 414-15.

Petitioner then had one year to file his federal habeas corpus petition or take other action to toll the one-year limitations period.  The Court recognizes that, pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction relief or other collateral review is pending in state court.  Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006).  However, upon the conclusion of his direct appeal, Petitioner did not file for any post-conviction relief or other collateral review until he filed for state habeas corpus relief in May 2017, nearly four years after his conviction became final.  Therefore, the one-year limitations period for filing a federal petition had already expired by the time he filed for collateral relief in the state courts in 2017, meaning that no time period remained to be tolled.  See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll.  A state court filing after the federal habeas filing deadline does not revive it.") (citing Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003)).  Thus, the instant petition filed in October 2021 is untimely.

> **B.   The Limitations Period Was Not Otherwise Reset under AEDPA, and Petitioner Has Not Shown that He Is Entitled to Equitable Tolling or that a Fundamental Miscarriage of Justice Has Occurred**

Petitioner has not provided any explanation that would delay or reset his one-year statute of limitations under any statutory sections of AEDPA set forth above.   Nevertheless, an otherwise untimely § 2254 petition may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred.  Equitable tolling can be applied to prevent application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently,

4

and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007).  However, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).  The petitioner bears the burden of proving his entitlement to equitable tolling, San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1072 (11th Cir. 2011).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category:  cases in which new evidence shows

'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 569 U.S. at 394-95.

Here, Petitioner has not shown he satisfies the test for application of equitable tolling or that a miscarriage of justice will occur if his claims are not considered. Petitioner has not shown extraordinary circumstances stood in his way and that he has been pursuing his rights diligently. To the contrary, Petitioner argues his petition is timely based solely on the date the Georgia Supreme Court denied his CPC to appeal the denial of his state habeas petition. He offers no information about the nearly four years between when his convictions became final in 2013 and when he commenced his state habeas proceedings.

Nor has Petitioner presented any evidence, much less new and reliable evidence, to show he did not commit the offenses of which he was convicted such that no reasonable juror would have found him guilty beyond a reasonable doubt. The Georgia Court of Appeals summarized the evidence presented at trial as follows:

> . . . [O]n Saturday, May 6, 2006, [Petitioner] checked into a motel room containing a single, king-sized bed with his 15-year-old daughter. After the victim went to sleep, [Petitioner] got into bed with her, wrapped his arm around her chest, and began rubbing her stomach. [Petitioner] then put his hands down the victim's underwear and put his fingers inside her vagina. He then turned her onto her back, pulled off her pants and underwear, and directed her to open her legs. When the victim, who was pretending to be asleep because she was frightened, failed to comply, he opened her legs and then penetrated her with his hands and his penis. According to the victim, [Petitioner] had sexual intercourse with her "all night."
>
> On Monday, May 8, 2006, the victim told her friend that "something happened with [her] dad." Later that day, the victim and her friend were summoned to the principal's office; "[b]oth girls were crying hysterically," and the friend advised the principal that the victim "was raped by her father." The victim then went to the school guidance counselor's office, where she wrote a multi-page statement detailing the incident at the motel.

> The victim was subsequently taken to the hospital, where a sexual assault kit was conducted, including cervical swabs. Authorities also obtained buccal swabs from both [Petitioner] and the victim. Subsequent testing by the Georgia Bureau of Investigation ("GBI") revealed that the cervical swabs taken from the victim contained spermatozoa, as well as the victim's DNA and DNA of [Petitioner's] sperm cells.
>
> [Petitioner] testified at trial. He admitted that he took his daughter to a motel for the night on May 6, 2006, but he denied sexually assaulting her. Instead, [Petitioner] testified that while the victim slept in the bed, he went in and out of the motel room while taking on the phone to his wife and watched television from a chair in the room, and he denied getting into bed with the victim.

Wynn, 744 S.E.2d at 65-66.

Petitioner acknowledges, and as the above description of trial evidence confirms, DNA evidence was presented at trial, but he argues his expert should have been able to test and retest the evidence to formulate an opinion favorable to the defense. (See doc. no. 1, p. 8; doc. no. 1-1, pp. 7-8.) As to new evidence, at best, Petitioner references a "white crusty substance" collected as part of the rape kit that was not tested, a substance he believes would not have been a DNA match to him and therefore exonerated him of the rape charge. (See doc. no. 1, p. 8; doc. no. 1-1, pp. 7-8.) However, the DNA evidence existed at the time of trial, and this was not a case based solely on DNA evidence.

Petitioner fails to explain how this purportedly new or untested DNA evidence overcomes the other evidence presented at trial, including the victim's own testimony.[1] Indeed, on direct appeal, the appellate court rejected Petitioner's speculation about what additional DNA testing may have shown, pointing out "the State's experts testified that the

---

[1] In affirming the rape conviction, the Court of Appeals detailed the victim's testimony concerning being scared during the assault, how Petitioner pushed open her legs, and how it "did not feel good" when Petitioner had intercourse with her. Wynn, 744 S.E.2d at 66.

7

DNA recovered from the victim's cervical swab was identical to [Petitioner's] DNA." Wynn, 744 S.E.2d at 67-68.  In sum, nothing about Petitioner's theories of what the DNA evidence might have shown satisfies the requirement for new and reliable evidence.

Moreover, Petitioner's other stated grounds for relief that do not focus on his hypothesis of what retesting the rape kit evidence might show - allegations of legal errors committed by the state courts and ineffective assistance of counsel - do not constitute new evidence.  (See generally doc. nos. 1, 1-1.)  Rather, Petitioner appears to rely only a post-hoc analysis of legal rulings and counsel's representation, all information long-since known to Petitioner.

For all of these reasons, neither equitable tolling nor the fundamental miscarriage of justice exception saves the untimely petition from dismissal.

### III.   CONCLUSION

Having conducted an initial review of the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DISMISSED** as untimely and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 16th day of December, 2021, at Augusta, Georgia.

/s/ Brian K. Epps
_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA